IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Fortino Alvarez,<br><br>    Petitioner,<br><br>vs.<br><br>Randy Tracey, Acting Chief Administrator for the Gila River Indian Community Department of Rehabilitation and Supervision,<br><br>    Respondent. | No. CV 08-2226-PHX-DGC (DKD)<br><br>**REPORT AND RECOMMENDATION** |

TO THE HONORABLE DAVID G. CAMPBELL, U.S. DISTRICT JUDGE:

    Fortino Alvarez filed a Petition for Writ of Habeas Corpus pursuant to the Indian Civil Rights Act (ICRA), 25 U.S.C. § 1303, and 28 U.S.C. § 2241. Alvarez is an enrolled member of the Gila River Indian Community (Community), and is challenging the convictions and sentences imposed by the Community Court in four separate criminal cases, involving incidents that occurred during 2003, involving several victims. He raises eight grounds for habeas relief. The Court has reviewed both the audio recordings and the transcripts of Alvarez's tribal court proceedings, as well as the pleadings filed by the parties. For the reasons stated below, the Court recommends that the Petition be denied and dismissed with prejudice.

1 **BACKGROUND**

2 Arraignment on CR 542 and CR 543

3       At his July 3, 2003 arraignment on CR 542 and CR 543, as part of the group
4 arraignment, Alvarez was advised of his right to counsel; right to call witnesses on his behalf;
5 right to cross-examine or question witnesses; right to a speedy trial, public trial and jury trial;
6 right to appeal decisions; and the right to habeas corpus relief in the United States District
7 Court. When asked by the tribal judge whether he had any questions about the complaint,
8 Alvarez replied in the negative. When Alvarez told the tribal judge that he was not sure
9 whether he wanted legal counsel, the judge informed Alvarez that he may be eligible for
10 legal counsel through Four Rivers Indian Legal Services, or through private counsel at his
11 own expense. He was then advised that if he pleaded guilty he would waive his right to trial,
12 and his right to counsel. He was then asked if he was prepared to enter a plea. When he
13 initially stated that he wanted to plead guilty, the tribal judge advised him that it would be
14 "real important for [Alvarez] to have additional information before [he] decide[d] to enter
15 a plea of guilty today." Alvarez then changed his plea to not guilty, and was held without
16 bond for 72 hours to allow for charging to be completed in a third criminal case. Based upon
17 the fact that the same victim was involved in all three incidents, the tribal judge also issued
18 a no contact order. During this proceeding, Alvarez was repeatedly asked if he had
19 questions, and he usually replied in the negative. If he questioned what the tribal judge
20 meant, either about the procedure itself or about some wording of the court, the tribal judge
21 provided an answer to Alvarez's satisfaction. The tribal judge followed the same procedure
22 for the arraignment in CR 543. Alvarez again indicated repeatedly that he understood the
23 proceedings and had no questions about the charges.

24 Arraignment on CR 549 and CR 552

25       On July 7, 2003, Alvarez was again advised of his rights as part of the group
26 arraignment. The tribal judge then individually asked Alvarez whether he had copies of the
27 complaints in CR 549 and CR 552, whether he understood the charges in the complaints, and

28

whether he understood his rights. He answered in the affirmative to all three questions, and pleaded not guilty to the charges. When first asked about seeking counsel, Alvarez indicated that he would not seek counsel. When asked again, he said he "probably" would seek counsel. When asked a third time whether he would be seeking counsel, he replied, "Yeah." He was held on $2,000 bond, an amount less than what the Community had recommended. Alvarez informed the tribal court that he could not pay the bond. The tribal judge then informed him that if he sought legal counsel, his attorney could "work on these things for you." Alvarez indicated that he understood.

Pretrial Hearing

At his pretrial hearing on July 31, the prosecutor informed the tribal court that he had provided Alvarez with copies of the police reports in all four cases. The tribal judge explained to Alvarez that it would involve four separate trials because the cases were not consolidated. When he heard this, Alvarez stated that he did not wish to go to trial. When he told the tribal judge he wished to plead not guilty to all the charges, the judge then asked the clerk for a trial date for the first case. Alvarez again stated that he did not want to take it to trial. After thoroughly reviewing the different charges in the four complaints, and Alvarez indicating that he understood, and indicating that he had copies of all pages of the complaints, he again tried to plead guilty to two charges in CR 552. The tribal judge tried to clarify whether that meant he would plead not guilty to the other two charges in the complaint, and Alvarez responded: "See, I don't really know about court that much, you know." As a result of this statement, the tribal judge informed Alvarez that he was not going to accept Alvarez's guilty plea to the two charges, and would instead set a trial date for each criminal case.

Alvarez then asked to be released on his own recognizance pending trial, promising he would appear for all court dates because "I don't want no bench warrant on me, out." The tribal judge advised Alvarez that because he had been charged with three incidents occurring within one month, all involving members of the same family, a $2,000 bond had been set.

The tribal judge advised Alvarez that he could file a motion to reduce the bail amount, but that as it stood, he could only be released upon payment of a $2,000 cash bond. Respondent contents that during this time, defendants were routinely provided with a copy of "Defendant's Rights" along with the complaint (attached as an exhibit to the Community's Response). The rights listed in this document are identical to what was read during each of the group arraignments. In addition, the prosecutor who represented the Community at the pretrial hearing and the bench trial avows that Alvarez appeared to understand his rights and what was happening during the proceedings.

Bench Trial

On October 28, 2003, a bench trial was conducted on CR 543, at which Officer Benally and J.C., a minor victim, and the brother of another victim testified. Officer Benally testified that he was called to a residence to investigate a disturbance, where he was told by both J.C. and E.C., another victim, that Alvarez had assaulted them. He testified that E.C. told him that Alvarez showed up at the residence intoxicated and started arguing with her. When she attempted to walk back to the residence, he physically assaulted her and restrained her from going inside her residence. She was hit on the left side of her head twice with a flashlight, causing injury. Officer Benally observed these injuries, and concluded they were consistent with her statements. Following this testimony, when informed by the trial judge of his right to cross-examine Officer Benally, and after the judge specifically explained to him how he could do this, Alvarez responded to the judge: "Well, I'm gonna have to say that, you know, everything he says is true." The judge asked "Everything he said is true?," and Alvarez responded, "Yeah." When asked by the judge whether there was anything Alvarez could ask that could "make it better" for him, Alvarez said there wasn't and declined to cross-examine the witness.

Following Officer Benally's testimony, J.C. testified that on April 12, 2003, his then 15-year-old sister E.C. came into the house and she was in the bathroom crying. She told J.C. that Alvarez hit her on the head twice with a flashlight, and that she fell to the floor. J.C.

testified that he observed a big bump on the back of her head, and that she was upset and crying when she told him about the incident. J.C. went outside and Alvarez struck him in the head, causing his head to bleed. J.C. then called the police and an ambulance. Following this testimony, the tribal judge asked Alvarez whether he had any cross-examination, whether there was anything that was brought up that he thought was not true or that he doubted, and if so, he could ask about that. Alvarez responded, "I would say no." Alvarez did not call any witnesses, and indicated to the tribal judge that he did not have any questions of the court. In closing arguments, the prosecutor conceded that he had not proven the charge of threatening to cause physical injury. Alvarez was convicted of two counts of assault, two counts of domestic violence, and one count of misconduct involving weapons.

Guilty Plea in CR 549 and CR 552

Following the bench trial, on the same date, before the same judge, Alvarez entered into a plea agreement, agreeing to plead guilty in CR 549 to assault and domestic violence, relating to an incident that occurred at E.C.'s home on April 28, 2003, when he hit T.C. with beer bottles, and harassed E.C. In exchange, the Community agreed to dismiss the charge of child abuse. At the same time, he also pleaded guilty in CR 552 to two counts of assault related to a separate incident. In exchange, the Community agreed to dismiss the charges of threatening and criminal trespass. When asked by the tribal judge whether there was any condition that he did not understand, Alvarez replied in the negative. When asked if he "understood pretty well all of the conditions," Alvarez replied, "Yes." When asked if he was changing his plea, of his own volition, understanding the consequences, Alvarez reiterated that he was (1) changing his plea; (2) it was of his own volition; and (3) he understood the consequences. When asked if he had "any questions as to any part of that agreement," Alvarez responded: "No, no questions at all." Once the tribal judge accepted the plea, he again asked Alvarez if he had any questions, and Alvarez responded: "No, no questions." The following exchange then took place:

> Judge: Okay. The only thing I'm going to say, Mr. Alvarez, is just understand the terms and your part and I think voluntarily you have entered into this agreement. I just want to make sure one more time and reiterate the question and that is in intelligently entering this you do understand all that is involved in the plea agreement with the Community? And no questions in your mind at all about that."
>
> Mr. Alvarez: No questions.

Arraignment and Guilty Plea in CR 909

On November 13, 2003, a criminal complaint was filed in CR 909, alleging an altercation that occurred with a cell mate, resulting in injuries so severe that the cell mate lapsed into a coma. On that same date, Alvarez was arraigned on CR 909. At the group arraignment, the court informed Alvarez of his right to counsel; right to remain silent; right to a jury trial; right to a speedy trial; right to cross-examine and call witnesses; and his right to file a petition for writ of habeas corpus. Alvarez indicated to the court that he had a copy of the complaint, understood the rights that had been read to him, and understood the charges. On November 19, 2003, Alvarez pleaded guilty in CR 909 to accomplice to assault and accomplice to attempted criminal homicide.

Sentencings

On October 28, 2003, the Community Court sentenced Alvarez to concurrent one-year terms of detention on the two counts in CR 549, and two one-year terms in CR 552, to run consecutively to each other and to the sentences imposed in CR 549. On November 19, 2003, The Community Court sentenced Alvarez to a total of five years' detention for the two counts of assault, two counts of domestic violence, and one count of misconduct involving weapons in CR 543, to run consecutively to the sentences imposed in CR 549 and 552. At the January 6, 2004 sentencing in CR 909, the Community Court sentenced Alvarez to concurrent one-year terms for each of the counts, to run consecutively to the sentences imposed in CR 543, 549 and 552, for a term of imprisonment totaling nine years. He is presently serving the two concurrent terms imposed in CR 909; he has completed the sentences in the other cases.

Habeas Petition

In his original petition, Alvarez raised nine grounds for habeas relief: (1) the sentences imposed violate § 1302(7) of the Indian Civil Rights Act (ICRA) because they impose terms of imprisonment exceeding one year in connection with individual criminal transactions;[1] (2) he was improperly denied his right to counsel in violation of §§ 1301(6) and (8) of ICRA; (3) the conviction in one of the criminal cases (CR 543) was entered in violation of his confrontation rights under § 1302(6) of ICRA because the court admitted the out-of-court testimony of a non-witness; (4) the Community failed to provide him with written witness statements prior to trial, which violated his rights under § 1302(8) of ICRA; (5) in one of the criminal cases (CR 543), he was convicted of a violation of the Community's Criminal Code § 2.402(A)(2), but this conviction was entered without proof of the intent element of that offense, a violation of his due process rights under § 1302(8) of ICRA; (6) the convictions were entered in violation of his right to counsel under § 1302(6) because he did not make a knowing and voluntary waiver of his right; (7) the convictions were entered in violation of his right to compulsory process under § 1302(6) of ICRA because he did not make a knowing a voluntary waiver of his right; (8) the convictions were entered in violation of his right to a jury trial under § 1302(10) of ICRA because he did not make a knowing and voluntary waiver of his right; and (9) the conviction in one of the criminal cases (CR 543) violated his right to be informed of the charges against him and his right to due process under §§ 1302(6) and (8) because he never received a copy of the complaint.[2]

---

[1]Ground One was dismissed by the district court in its March 31, 2011 Order. *See* Doc. 95.

[2]The Community argues that Alvarez is not "in custody" for purposes of eligibility for habeas corpus relief in CR 543 because at the time he filed his petition, he had already completed the sentences in that case. For purposes of the in-custody requirement, when a habeas petitioner is serving consecutive sentences, the sentences are viewed "as composing a continuous stream." *Garlotte v. Fordice*, 515 U.S. 39, 41 (1995). Therefore, Alvarez is

**DISCUSSION**

Right to Counsel

In Grounds Two and Six, Alvarez contends he was denied his right to counsel in CR 549 and CR 552. He alleges that the Community did not adequately inform him of his right to counsel and that he did not make a knowing and voluntary waiver of that right. ICRA provides that no Indian tribe exercising powers of self-government shall "deny to any person in a criminal proceeding the right . . . at his own expense to have the assistance of counsel for his defense." 25 U.S.C. § 1302(6). There is no federal right to appointed counsel in tribal criminal proceedings. *Tom v. Sutton*, 533 F.2d 1101 (9th Cir. 1976). The Community's obligation under the ICRA is to inform a defendant of his or her right to counsel at his or her own expense. The tribal judge in this case was extremely careful in ascertaining whether or not Alvarez wanted to afford himself of counsel. Indeed, the tribal judge took pains to make sure he understood what choices he had at each arraignment regarding a plea of guilty or not guilty, and twice advised Alvarez to plead not guilty if he was not sure. Not only did the tribal judge make Alvarez aware of his right to the assistance of counsel at his own expense, but went further and informed Alvarez that he might be entitled to representation without cost through Four Rivers Indian Legal Services. A review of the transcript of all proceedings in this case indicates that Alvarez was fully informed of his right to counsel at all stages, and that he understood his right to counsel under the ICRA.

Confrontation Clause

In Ground Three, Alvarez alleges that the introduction of out-of-court statements of the victim, E.C., through Officer Benally, violated the ICRA, which provides that no Indian tribe exercising powers of self-government shall "deny to any person in a criminal proceeding the right . . . to be confronted with the witnesses against him." 25 U.S.C. §

---

considered in custody pursuant to all of his sentences until all are completed.

1302(6).[3] The victim was issued a subpoena, but did not appear at trial. The Presentence Investigation Report indicates that both of the victim's parents said she did not want to talk about the incident for fear of getting beat up, and that their family had been threatened with violence by Alvarez's family.

Following Officer Benally's testimony, the tribal judge questioned him on his independent recollection of the events he testified to after consulting his report. Specifically, the judge inquired as to the length of time between interviewing the victim, and filling out the report. Officer Benally testified that he would have written the report less than three days after the interview. A copy of the Incident Report was attached as an exhibit to Alvarez's Reply. It indicates that Officer Benally completed the report on the day of the incident.

First, Alvarez did not object to Officer Benally's testimony. Indeed, he admitted all that Benally testified to was accurate. Second, the Community made a good faith effort to secure the victim's presence at trial by the issuance of a subpoena. Third, Alvarez does not allege that the victim's recitation to either Officer Benally or T.C. was in any way unreliable. In addition, Alvarez could have called J.C. as a witness to ask about his observations of E.C. When asked if he wanted to cross-examine Officer Benally to examine any facts that were brought up or to counter any of those facts, he acknowledged twice that all Officer Benally testified to was true, and that there was nothing that could "make it better." Again, Alvarez could have cross-examined J.C. about what he observed of E.C. on the date of the incident. When the judge asked whether there was anything about the testimony that Alvarez did not think was true or that he doubted, Alvarez replied, "I would say no." It is fair to assume that had E.C. testified, Alvarez would have declined to cross-examine her as well. Having failed to cross-examine one of the victims, there is no reason to assume he would have treated another victim any differently. Considering all the above circumstances, the Court concludes

---

[3]All the proceedings in CR 543 occurred in 2003, prior to the Supreme Court's decision in *Crawford v. Washington*, 541 U.S. 36 (2004).

- 9 -

that the tribal judge's admission of the out-of-court statement does not entitle Alvarez to habeas relief.

Gila River Indian Code Violations

In Grounds Four and Five, Alvarez claims violations of the Gila River Indian Code. In Ground Four he claims the Community failed to provide certain witness statements to Alvarez prior to trial in violation of GRIC Code § 2.1312(A). That provision states:

> The prosecution shall permit the defendant to inspect and to copy or photograph any books, papers, documents, or other objects in the possession of the prosecution, obtained from the defendant or elsewhere, if the item sought may be material to the defense and the request is reasonable. The defendant may make such motions to the Court as are necessary to enforce the provisions of this section.

In Ground Five he claims the Community failed to prove the intent element of GRIC Code § 5.402(A)(2) in CR 543 for the offenses of assault. Specifically, he contends that the Community failed to prove that Alvarez intentionally placed the victims in reasonable fear of immediate physical injury.

Compliance with a discovery provision of the Community's criminal code, and sufficiency of evidence of intent, are both issues of Community law and not appropriate for federal habeas review. "A dispute over the meaning of tribal law does not arise under the Constitution, laws, or treaties of the United States, as required by 28 U.S.C. §§ 1331 and 1362. This is the essential point of opinions holding that a federal court has no jurisdiction over an intratribal dispute." *Kaw Nation ex rel. McCauley v. Lujan*, 378 F.3d 1139, 1143 (10th Cir. 2004). If Alvarez is making a *Brady* claim, that fails also. *Brady* requires the production of *exculpatory evidence*. Alvarez has made no specific request for such evidence. *Strickler v. Greene*, 527 U.S. 263, 280 (1999). In addition, he has not alleged the suppression of any *exculpatory* evidence, or alleged any reasonable probability that had the evidence been disclosed to him, the result of the proceeding would have been different. *United States v. Bagley*, 473 U.S. 667, 682 (1985). With regard to the element of intent, the

testimony that Alvarez struck both victims on the head with a blunt object is sufficient proof that he acted with the objective of causing a particular result.

Compulsory Process Claim

In Ground Seven, Alvarez contends that his right to compulsory process was violated in all four criminal cases. The record reflects that he was informed of his right to compulsory process in all four cases. When a defendant knows that he may subpoena witnesses but elects not to, there is no violation of his right to compulsory process. *Osborne v. United States*, 371 F.2d 913, 926-27 n. 15 (9th Cir. 1967). In any event, under the ICRA, the right exists to secure the attendance and testimony of witnesses *in his favor*. *United States v. Valenzuela-Bernal*, 458 U.S. 858, 867 (1982). Alvarez has not alleged, much less established, that he was deprived of any testimony that would have been relevant and material and vital to his case. *Id*. He was required to show that the testimony of absent witnesses would have been both material and favorable to his defense. *Cacoperdo v. Demosthenes*, 37 F.3d 504, 509 (9th Cir. 1994). He has failed to do so, and his claim of a denial of compulsory process therefore fails.

Right to Jury Trial and to Be Informed of the Charges

Alvarez alleges in Ground 8 that he was not adequately informed of his right to a jury trial. The record belies this claim. At each group arraignment, he was advised of this right. At each individual arraignment, he acknowledged that he understood the rights that had been read to him. In Ground Nine, he contends that the conviction in one of the criminal cases (CR 543) violated his right to be informed of the charges against him and his right to due process under §§ 1302(6) and (8) because he never received a copy of the complaint. Again, the record contradicts this claim. A review of both the audio recording and the transcript of the arraignment indicates that Alvarez had no questions about the complaint, and when the charges were read to him, he indicated that he had no questions regarding the charges. At the pretrial hearing, the tribal judge reviewed all six charges with Alvarez, with Alvarez

referring to his copy of the complaint. The Court concludes that Alvarez was adequately informed of his right to a jury trial, and that he received a copy of the complaint in CR 543.

**IT IS THEREFORE RECOMMENDED** that Alvarez's Petition for Writ of Habeas Corpus be **denied and dismissed with prejudice** (Doc. 1).

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment. The parties shall have **ten** days[4] from the date of service of a copy of this recommendation within which to file specific written objections with the Court. *See*, 28 U.S.C. § 636(b)(1); Rules 72, 6(a), 6(b), Federal Rules of Civil Procedure. Thereafter, the parties have **seven** days within which to file a response to the objections. **No extensions of time for filing such objections or response to objections will be granted by the Court.** Failure timely to file objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the district court without further review. *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003). Failure timely to file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation. *See* Rule 72, Federal Rules of Civil Procedure.

DATED this 10th day of February, 2012.

_____
David K. Duncan
United States Magistrate Judge

---

[4]In its discretion, the Court will shorten the time for filing of objections. *See Tripati v. Drake*, 908 F.2d 977 (9th Cir. 1990) (the court need not afford the parties the full amount of time allotted for filing objections; the time allotted is a maximum, not a minimum).