**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Fortino Alvarez,<br><br>    Petitioner,<br><br>vs.<br><br>Randy Tracey, Acting Chief Administrator for the Gila River Indian Community Department of Rehabilitation and Supervision,<br><br>    Respondent. | No. CV-08-02226-PHX-DGC<br><br>**ORDER** |

  Petitioner Fortino Alvarez filed a petition for writ of habeas corpus pursuant to the Indian Civil Rights Act, 25 U.S.C. § 1303, and 28 U.S.C. § 2241. Doc. 1. The Petition challenges convictions and sentences that the Gila River Indian Community court imposed in four separate criminal cases regarding incidents that took place in 2003. Magistrate Judge David K. Duncan filed a Report and Recommendation ("R&R"), recommending that the Court deny the petition. Doc. 105 at 12. Alvarez filed objections to the R&R. Doc. 106. Alvarez has not requested oral argument. For the reasons that follow, the Court will accept the R&R and deny the petition.

**I. Standard of Review.**

  A party may file specific, written objections to an R&R within ten days after being served with a copy the R&R. *See* Fed. R. Civ. P. 72(b); 28 U.S.C. § 636(b)(1)(C). The Court must undertake a de novo review of those portions of the R&R to which specific objections are made. *See id.*; *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *United*

*States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003). The Court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. *See* 28 U.S.C. § 636(b)(1).

**II.   Discussion.**

Alvarez filed nine claims for relief in his original petition. Doc. 1 at 6-11. The Court previously dismissed Claim 1. Doc. 95. Alvarez has withdrawn Claims 5 and 9. Doc. 106 at 1. Alvarez's remaining claims are that he was improperly denied his right to counsel in violation of §§ 1301(6) and § 1302(8) of the Indian Civil Rights Act (ICRA) (Claim 2); that the conviction in one of the criminal cases (CR 543) was entered in violation of his confrontation rights under § 1302(6) of ICRA because the court admitted the out-of-court testimony of a non-witness (Claim 3); that the Community failed to provide him with written witness statements prior to trial, which violated his rights under § 1302(8) of ICRA (Claim 4); that the convictions were entered in violation of his right to counsel under § 1302(6) because he did not make a knowing and voluntary waiver of his right (Claim 6); that the convictions were entered in violation of his right to compulsory process under § 1302(6) of ICRA because he did not make a knowing and voluntary waiver of his right (Claim 7); and that the convictions were entered in violation of his right to a jury trial under § 1302(10) of ICRA because he did not make a knowing and voluntary waiver of his right (Claim 8).

**A.   Claims 2 and 6: Right to Counsel.**

ICRA provides that no Indian tribe exercising powers of self-government shall "deny to any person in a criminal proceeding the right . . . at his own expense to have the assistance of counsel for his defense." 25 U.S.C. § 1302(6). Unlike the broader right recognized under the Sixth Amendment, there is no federal right to appointed counsel in tribal courts. *Tom v. Sutton*, 533 F.2d 1101 (9th Cir. 1976).

Alvarez objects to the dismissal of his right to counsel claims because, he argues, Judge Duncan based this recommendation solely on the fact that Alvarez was informed of and understood his right to counsel at all proceedings. Doc. 105 at 10. Alvarez argues on

the basis of *Chandler v. Fretag*, 348 U.S. 3 (1954), that the right to counsel guarantees more than the right of a criminal defendant to be *informed* of his right to counsel, but that he must also have "a reasonable opportunity to employ and consult with counsel." Doc. 106 at 6. Alvarez argues that he was not given "a reasonable opportunity to employ and consult with counsel" when he expressed a desire to do so at his arraignments, and that the court failed to take reasonable steps to give him an opportunity to secure representation when he exhibited confusion and a failure to understand the nature of subsequent pretrial, trial, and sentencing proceedings. Doc. 104 at 3-6. Alvarez also objects that he did not make a knowing and voluntary waiver of his right. *Id.* at 10.

The record shows that at Alvarez's arraignment on the first two charges, the Community court judge verified that Alvarez had been informed of his rights and that he had no questions about them. Doc. 104-1 at 4:9-12. The judge also asked Alvarez if he wanted counsel, to which Alvarez said he was "not sure at this time." *Id.* at 4:18-21. The judge further informed him that he "may be eligible for counsel through the Four Rivers Indian Legal Services," but that he would otherwise be responsible for obtaining counsel at his own expense. *Id.* at 5:1-23. When the judge asked if Alvarez was ready to enter a plea, Alvarez answered "Yes." *Id.* at 5:24-6:1. The judge also advised Alvarez that if he entered a guilty plea he would waive his rights to counsel and a trial and advised Alvarez to enter a not-guilty plea "if you're not sure what to do today." *Id.* at 6:2-24. After stating that he wanted to enter a guilty plea and being cautioned by the judge that it would be important to receive additional information such as the police report before pleading guilty, Alvarez changed his plea to "not guilty." *Id.* at 6:14-7:8.

At Alvarez's arraignment on the next two charges, the Community court judge verified that Alvarez had received copies of the complaint, that he had no questions, and that he understood his rights. Doc. 104-2 at 4-5. Alvarez then entered not-guilty pleas on the remaining charges. *Id.* at 6:2-3. When the judge asked, "Do you seek counsel in this matter?" Alvarez answered "Nope." Doc. 104-2 at 6:1-15. The judge further clarified: "What I am asking you is if you're seeking an attorney advocate or counsel to represent

you. Are you seeking that or will you be seeking that?" *Id.* at 6:16-18. Alvarez then answered, "Yeah, probably counsel." *Id.* at 6:19-23. Later, when Alvarez asked about the possibility of probation, the judge told him that he could address that at pretrial and further advised him "if you seek legal counsel, like, possibly Four Rivers or private advocate, they can work on those things for you." *Id.* at 9:5-9.

Based on this record, the Court finds that Judge Duncan's recommendation to dismiss Alvarez's right to counsel claims was not in error. Alvarez cites no cases showing that ICRA requires a tribal court judge to stop the proceedings when, as here, a criminal defendant is informed of his right to seek counsel and states that he is "not sure" if he will do so or that he will "probably" do so, but otherwise states that he is ready to proceed. Neither are the facts in this case similar to those in *Chandler*, where the Supreme Court found that the trial court had not given the defendant adequate opportunity to employ and consult with counsel after he made an affirmative request to do so. In *Chandler*, a criminal defendant waived his right to counsel on charges of housebreaking and larceny that carried a 3 to 10 year sentence, saying that "an attorney could do him no good." 348 U.S. at 4. When defendant appeared for trial two months later, the judge informed him of an additional, habitual criminal accusation that carried a mandatory life sentence with no possibility of parole. *Id.* at 4-5. Defendant promptly asked for an extension of time to secure counsel; the court denied the request and proceeded with trial. *Id.* at 5. The Supreme Court held that the defendant had "at the earliest possible moment affirmatively sought an opportunity to obtain counsel on the habitual criminal accusation," and concluded that "[b]y denying petitioner any opportunity whatever to obtain counsel on the habitual criminal accusation, the trial court deprived him of due process of law." *Id.* at 10.

Unlike *Chandler*, Alvarez did not at any time affirmatively request an opportunity to obtain counsel, nor did he ask for an extension or otherwise indicate that he was unready to proceed. The judge repeatedly reminded Alvarez of his right to seek counsel and the possibility of doing so at no cost through the Four Rivers Indian Legal Services.

There is no evidence in the record that Alvarez was denied an opportunity to employ or consult with counsel after repeatedly being informed that he had the right to do so and even being advised of possible services available to him. Neither does the fact that Alvarez may have been confused during later proceedings mean that the Community court violated his rights to representation where Alvarez appeared unrepresented despite being told that he had the right to seek counsel and despite being advised that counsel could work with him on issues he could take up at pretrial, such as possible probation. The tribal judge even intervened when Alvarez first attempted to plead guilty, stating that doing so would cut off his right to counsel and a trial, and cautioning him not to do so if he was "not sure." The fact that Alvarez did not act on his right to seek counsel is not cause for finding that the Community court failed to give him a reasonable opportunity to secure counsel.

In *United States v. Ant*, 882 F.2d 1389, 1394 (9th Cir. 1989), the Ninth Circuit discussed the standard for a knowing and voluntary waiver of the Sixth Amendment right to counsel, but declined to apply the standard to Ant's conviction in tribal court because there is no corresponding federal right to appointed counsel in tribal court. *Id.* at 1392. The court determined that where Ant indicated in tribal court that he understood his right to counsel, the district court's finding that his guilty plea was valid under ICRA was not clearly erroneous, even where Ant claimed that the tribal court judge did not ask him if he had an attorney or wished to have one. *Id.* at 1392. Here, Judge Duncan correctly found, and Alvarez does not dispute, that Alvarez was fully informed of his right to counsel at all stages, and that he understood his right to counsel under ICRA. The Court finds this a sufficient basis to deny Alvarez's right to counsel claims.

### B. Claim 3: Confrontation Clause Violation.

ICRA makes it unlawful for a tribal court to deny criminal defendants the right "to be confronted with the witnesses against him." 25 U.S.C. § 1302. Alvarez claimed that the Community court deprived him of this right because one of the minor victims, E.C., did not testify at trial, but the court allowed Community Police Officer Stanford W.

Benally to testify to E.C.'s out-of-court statements. Doc. 1 at 7-8.

Alvarez objects to Judge Duncan's finding that the Community court did not violate his rights because it made a good faith effort to secure E.C.'s presence and Alvarez waived his right to object. Doc. 106 at 8. Alvarez argues that simply issuing a subpoena is not a "good faith effort" and that a waiver, if it occurred, was due to the Community court's infringement of his right to counsel. *Id.*

Alvarez's trial took place in 2003, prior to the Supreme Court's ruling in *Crawford v. Washington*, 541 U.S. 36 (2004). *Ohio v. Roberts*, 448 U.S. 56 (1980), *overruled by Crawford v. Washington*, 541 U.S. 36 (2004), therefore sets the proper standard in this case. Doc. 106 at 7. *Roberts* stated that "[i]n the usual case . . . the prosecution must either produce, or demonstrate the unavailability of the declarant whose statement it wishes to use against the defendant." 448 U.S. at 65. *Roberts* stated as a general proposition that "'[t]he lengths to which the prosecution must go to produce a witness . . . is a question of reasonableness.'" *Id.* (quoting *California v. Green*, 399 U.S. 149, 189, n. 22 (1970)). *Roberts* concluded that "[t]he ultimate question is whether the witness is unavailable despite good-faith efforts undertaken prior to trial to locate and present that witness." 448 U.S. at 74.

Alvarez claims that the prosecution issued a subpoena but never actually served E.C., and made no other efforts to secure her presence at trial. Doc. 106 at 7. Alvarez argues on the basis of *United States v. Williams*, 45 F.App. 775, 777 (9th Cir. 2002), that simply issuing a subpoena does not constitute a good faith effort to secure a witness's presence. Doc. 106 at 8. *See Williams*, 45 F. App. at 777 (finding where the prosecution served a subpoena to a detained witness prior to release, but did not attempt to notify her of changed trial dates or to locate her whereabouts, that the prosecution's "limited effort" was insufficient to establish unavailability at trial.).

It is not clear from the record that the prosecution made a reasonable effort to secure E.C.'s presence at trial. The affidavit of prosecutor Carleton J. Giff states that E.C. was subpoenaed to testify but was not personally served, and that she did not appear.

Doc. 98-2, ¶ 10.  Judge Duncan stated that the Presentence Investigation Report indicated that both E.C.'s parents said she did not want to testify for fear of getting beat up and that the family had been threatened with violence by the Alvarez family.  Doc. 9 at 12.  It is not clear, however, that the prosecution was aware of E.C.'s fears at the time she failed to appear for trial.  Nor is it clear that a minor's refusal to testify or fear of doing so is grounds for a finding of unavailability where the minor's whereabouts is known.  *See, e.g., Dres v. Campoy*, 784 F.2d 996 (9th Cir. 1986) (showing of unavailability of minor witness adequate where reluctant witness fled prior to trial and prosecutor made every reasonable effort to locate her); *Burns v. Clusen*, 798 F.2d 931, 937-43 (7th Cir. 1986) (showing of unavailability inadequate where prosecution produced no up-to-date evidence that minor witness's psychological condition could resurge were she forced to testify).

Even if the prosecution failed to meet its burden of showing that E.C. was unavailable, however, Alvarez cannot argue that his rights were violated by his inability to confront E.C. as a witness.  Alvarez does not dispute that when given the opportunity to cross-examine Officer Benally about the statements E.C. had made, he affirmed that everything Officer Benally testified to was true.  Following Officer Benally's testimony, the trial judge informed Alvarez that he had a right to cross-examine Officer Benally and even explained to him how to do so.  Alvarez responded: "Well, I'm gonna have to say that, you know, everything he says is true."  Doc. 105 at 4.  The judge asked, "Everything he said is true?"  Alvarez replied "Yeah."  *Id.*  When the judge then asked whether there was anything Alvarez could ask that could "make it better" for him, Alvarez answered that there was not and declined to cross-examine the witness.  *Id.*  In light of the fact that Alvarez admitted the allegations against him regarding E.C., his inability to confront E.C. did not prejudice his defense.

To the extent that Alvarez argues that his failure to object to the use of out-of-court statements or to confront any witnesses is a result of the Community court's infringement of his right to counsel, the Court is not persuaded, for the reasons stated

above, that the tribal court deprived Alvarez of his right to seek counsel under ICRA.

### C. Claim 4: Due Process Violation.

Alvarez claimed that the Community violated his due process rights under 25 U.S.C. § 1302(8) by failing to provide him with written witness statements before trial as required by the Gila River Indian Code. Doc. 1 at 8. Judge Duncan recommended dismissal of this claim on the ground that compliance with a discovery provision of the Community code is not an appropriate basis for federal habeas review and Alvarez's claim does not constitute a *Brady* violation because it does not involve the production of exculpatory evidence. Doc. 106 at 10-11. Alvarez objects that his claim was not based on breach of the Community code or *Brady*, but on infringement of his due process rights under 25 U.S.C. § 1302(8). Doc. 106 at 9; *see* Doc. 104 at 11.

The Court does not agree that Alvarez has made a valid federal claim under ICRA. The Ninth Circuit ruled in *Landford v. Day*, 110 F.3d 1380 (9th Cir. 1996), that alleged errors in the interpretation and application of state law are not grounds for federal habeas relief and that a petitioner may not "transform a state-law issue into a federal one merely by asserting a violation of due process." *Id.* at 1389; *see also Middleton v. Cupp*, 768 F.2d 1083, 1085 (9th Cir. 1985) ("[Habeas relief] is not available when a petitioner merely alleges that something in the state proceedings was contrary to general notions of fairness or violated some federal procedural right unless the Constitution or other federal law specifically protects against the alleged unfairness or guarantees the procedural right in state courts."). This principle also applies to habeas actions concerning tribal court procedures. *See Smith v. Confederated Tribes of the Warm Springs Reservation of Oregon,* 783 F.2d 1409, 1413 (9th Cir.), *cert. denied,* 479 U.S. 964, (1986) (finding that the district court erred in granting habeas relief where it found the tribal court was not proceeding expeditiously). The Ninth Circuit has stated that "[f]ederal courts must avoid undue or intrusive interference in reviewing Tribal Court procedures." *Id.* at 1412. Because the substance of Alvarez's due process claim relates solely to the alleged breach of a procedural requirement under the Gila River Indian Code, the Court agrees with

- 8 -

Judge Duncan's recommendation that this claim should be dismissed.

**Claims 7: Right to Compulsory Process.**

Alvarez claimed that he was denied his right to compulsory process for obtaining witnesses in his favor under 25 U.S.C. § 1302(6). Doc. 1 at 10. Judge Duncan found that Alvarez was informed of his rights in all four cases, including his right to call witnesses, but failed to exercise that right, and that such a failure on his part does not constitute a violation of his right to compulsory process. Doc. 105 at 2, 11 (citing *Osborne v. United States*, 371 F.2d 913, 926-27, n. 15 (9th Cir. 1967)). Alvarez does not argue that he was not informed of his rights. Instead, he argues that the "group arraignment" procedure informing him of his rights was "inadequate to ensure that Mr. Alvarez's waiver of his rights was knowing and voluntary." Doc. 106 at 10.

Alvarez cites to *Braswell v. Wainright*, 463 F.2d 1148, 1155 (5th Cir. 1972), as showing that a criminal defendant must make a knowing and intelligent waiver of his right to compulsory process. Docs. 104 at 13; 106 at 9. But *Braswell* dealt with a state court's exclusion of a defense witness who had violated the court's sequestration rule. 463 F.2d at 1155. The Fifth Circuit held that exclusion of a witness must be balanced against a defendant's right to call witnesses on his own behalf and would be permissible only where a defendant had made a knowing and intelligent waiver of that right. *Id. Braswell* does not apply in this case because Alvarez made no attempt to call witnesses in his own defense.

Judge Duncan also found that Alvarez had not alleged that testimony of any absent witnesses would have been material and beneficial to his defense, as required for securing the right to compulsory process. Doc. 105 at 11. *See Cacoperdo v. Demosthenes*, 37 F.3d 504, 509 (9th Cir. 1994) ("There is no showing by Cacoperdo that he was deprived of testimony that would have been " *relevant* and *material* [and] *vital* " to his defense. . . . Because Cacoperdo did not make such a showing, his Sixth Amendment compulsory process claim fails.") (emphasis in original) (internal citation omitted). The Court finds that Alvarez's ICRA compulsory process claim also fails.

**Claim 8: Right to Jury Trial.**

Alvarez claimed that the Community court convicted him in violation of his right to a jury trial. Doc. 1 at 10. Alvarez makes the same argument he made with respect to his compulsory process claim: that the "group arraignment" procedure informing him of his rights was inadequate for purposes of waiver. *Id.* Alvarez relies on *United States v. Gonzales-Florez*, 418 F.3d 1093 (9th Cir. 2005), in which the Ninth Circuit set forth the requirements for informing a defendant of his or her rights to a jury trial in federal district court, including that the district court "question the defendant to ascertain whether the defendant understands the benefits and burdens of a jury trial and freely chooses to waive a jury." *Id*. at 1103.

Alvarez fails to show that the requirements for waiver in federal district court apply to tribal court proceedings. ICRA guarantees to "any person accused of an offense punishable by imprisonment the right, upon request, to a trial by jury of not less than six persons." 25 U.S.C. § 1302(10). Judge Duncan found that Alvarez was advised of this right at each group arraignment, and that "[a]t each individual arraignment, he acknowledged that he understood the rights that had been read to him." Doc. 105 at 11. Alvarez does not dispute this finding. Because the record is clear that Alvarez was advised of his right to a jury trial, and he has cited no authority to show that a waiver of the right in tribal court requires the same formalities as the waiver of the right in federal court, the Court will accept Judge Duncan's rejection of this claim

. **IT IS ORDERED:**

1. Magistrate Judge David K. Duncan's R&R (Doc. 105) is **accepted**.
2. Alvarez's petition for writ of habeas corpus (Doc. 1) is **denied**.
3. The Clerk of the Court shall **terminate** this action.

Dated this 28th day of March, 2012.

_____
David G. Campbell
United States District Judge